**Wytheville.**

| 86 | 953 |
| 96 | 630 |

CRABTREE v. DUNN AND ALS.

JUNE 19th, 1890.

1. HUSBAND AND WIFE—*Witnesses.*—Where land is claimed by wife as her separate property against her husband's creditors, she is not a competent witness in support of her claims.
2. IDEM—*Separate estate—Case at bar.*—Land purchased in name of and conveyed to husband, claimed to have been paid for with the separate funds of wife : *held,* that her claim was not sustained by the evidence.

Appeal from decree of circuit court of Bland county rendered at its April term, 1887, in the cause wherein the appellant, Polly A. Crabtree, was complainant and D. W. Dunn and others were defendants.   Opinion states the case.

*F. S. Blair,* for the appellant.

*Williams Bros.,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The case, as presented by the pleadings and evidence, is as follows : Long prior to the institution of the present suit, there was pending in the circuit court of Wythe county a chancery suit in the name of John Crabtree, complainant, against R. C. Kent, trustee, and others, defendants; in which suit a decree was entered, on the 10th day of February, 1872, directing said Kent, trustee, to convey to Rees Crabtree that portion of the

tract of land in said suit described as containing 111 acres, according to a plot of James Huddle, surveyor, bearing date 16th June, 1870. In obedience to said decree, said Kent, trustee, on the 15th day of June, 1872, conveyed said 111 acres, by metes and bounds, to said Rees Crabtree, and in the deed further describes the land as "being a portion of the land conveyed by John Crabtree to R. C. Kent in a deed of trust now recorded in the county of Bland." Only fragmentary parts of the record in said suit of John Crabtree against Kent, trustee, and others, appear in the record here. It does appear, however, that prior to that suit, John Crabtree had conveyed to R. C. Kent, trustee, a tract of land in Bland county, known as "the old John Crabtree land," of which the 111 acres conveyed by Kent, trustee, under the decree of court as aforesaid, to Rees Crabtree, was a part. Rees Crabtree was at the time of said conveyance, and is now, the husband of Polly A. Crabtree, the appellant here.

It seems that prior to said suit of John Crabtree against Kent, trustee, and others, that said Kent had, as trustee, sold the entire tract conveyed to him in trust, and that Rees Crabtree, the husband of Polly A. Crabtree, the appellant here, became the purchaser thereof, and, with his said wife's brother, Elias Foglesong, as his surety, executed his bonds to said Kent, trustee, for the purchase money. Subsequently arose the suit of John Crabtree against Kent, trustee, and others, the real objects of which suit do not appear by the record here; but it does appear by the deed from Kent, trustee, to Rees Crabtree, that the conveyance thereby of the 111 acres here in controversy, was made to Rees Crabtree in obedience to a decree rendered in said cause; that the land thus conveyed, was part of the "old John Crabtree land," conveyed in trust to R. C. Kent, and that it was conveyed by metes and bounds.

The title to the 111 acres in controversy having been thus acquired by Rees Crabtree, the husband of the appellant, Polly A. Crabtree, he contracted debts which became charged on

same, and nothing adverse to his ownership of the land appears to have been asserted by any one until after the lapse of some fourteen years, when the appellee here, D. W. Dunn, instituted a suit in chancery against said Rees Crabtree and others, in the circuit court of Bland county, the object of which was to subject said 111 acres of land, as the property of Rees Crabtree, to the satisfaction of a judgment theretofore recovered by said Dunn against said Crabtree. And at the November term, 1886, of the circuit court of Bland county, a decree was rendered in said cause directing said tract of 111 acres to be sold to satisfy, among other things, the judgment in favor of said Dunn; and the commissioner had advertised the land in obedience to said decree, when he was enjoined from further proceedings, as follows:

On the 14th of January, 1887, at the suit of Polly A. Crabtree, the wife of Rees Crabtree, the judge of said circuit court granted an injunction restraining the sale of said land until the further order of the court.

In her bill, Polly A. Crabtree, after referring to the suit of D. W. Dunn against her husband, Rees Crabtree, and others, and the decree rendered therein for the sale of said 111 acres of land, alleges that she is equitably entitled to said tract of land as her separate estate; that she was never made a party to the suit of D. W. Dunn against her husband, Rees Crabtree, and others, and never had an opportunity of defending her rights therein involved; that her maiden name was Foglesong, a daughter of Henry Foglesong, and the wife of Rees Crabtree. She further alleges that "the old John Crabtree farm was formerly sold under a deed of trust by R. C. Kent, trustee, in obedience to a decree in the suit of John Crabtree against Kent, trustee, and others, and that Rees Crabtree 'bid off' the same for said John Crabtree, who, she is informed, gave bonds therefor, payable in instalments on —— years' time; but being wholly unable to make the payment for same when due, surrendered and gave up the said contract, and Elias Foglesong,

her brother, proposed to step in and buy the said land, provided she (appellant) would agree and undertake to buy a certain boundary thereof, afterwards found to contain 111 acres, at the price of $997 00, being at the rate of nearly $9 00 per acre; that, with the promise of help from her father, she agreed to said proposal, and in this way bargained and contracted with said Elias Foglesong for said land, who thereupon bought the said Crabtree farm, and in accordance with the said contract, *she* (Polly A. Crabtree) was allowed to take possession thereof, and has uninterruptedly held possession thereof to the present time, occupying, cultivating and making improvements thereon—having built a comfortable dwelling house thereon, and cleared portions, much of which was in woods, and using the crops, rents and profits thereof as her own individual property, and at the same time residing on the said land as her own home, together with her husband and family."

The said Polly A. Crabtree further alleges in her bill "that by the aid of her father, she has been able to make, and has made the payments in full agreed and contracted to be paid by her to said Foglesong for said land, having on the 20th day of December, 1886, paid and settled the sum of $380 00, being the last payment and balance in full of the said purchase price of $997 00, as will more fully appear by the receipt of the said Elias Foglesong, herewith filed and marked 'R,' and prayed to be considered as part of this bill."

And she further sets forth in her said bill that she "had been expecting that, upon the last payment of said purchase money, the deed of conveyance of said land would be made to her separate use and benefit, when, to her great surprise and astonishment, she was informed that, by mistake or indiscretion, the deed for said 111 acres had been already made to the said Rees Crabtree (her husband) instead of to herself," a copy of which she submits with her bill. She then alleges "that the said Elias Foglesong, knowing that her share of pur-

chase would be apt to be forthcoming, advanced the entire balance of purchase money to the trustee, and thereupon deeds were made by him to a number of persons who had bought parts of said Crabtree land, to-wit: Sam. Steel, H. Crabtree, Elias Foglesong, who retained a part, and, among the number, to Rees Crabtree the deed for the 111 acres, instead of to your oratrix, as it ought to have been made."

She further positively alleges "that the entire amount of the money and the means paid for the said land, was her own individual means, derived from and advanced by her father for her own separate use, and so advanced as of her share she was to get of her father's estate; that the said Rees Crabtree (her husband) had no means of his own with which to make any payment, and made no payment of said purchase money, or any part thereof, and therefore was not entitled to any deed for said land, and that the said deed so made to him was made without her consent or permission, or any knowledge thereof on her part, and that she was not informed thereof until since the progress of this suit, (meaning, presumably, the suit of Dunn against her husband and others,) and, having been informed of said misconveyance and the suit to subject and deprive her of her home and the settlement provided for her by her father, she fell sick and was for a length of time prostrated with severe and almost fatal illness, and thus remained long unable to see to any kind of business; that she at length, by the assistance of Mr. D. C. Wright as her friend and agent, employed counsel in her behalf; that a petition on her part was presented, praying to be made a party to said suit of Dunn against Crabtree and others, which was refused by the court, but without prejudice, however, to her right to bring an original suit."

And in her bill she charges "that the said deed to Rees Crabtree for the 111 acres of land, whether made by mistake or misdirection, or even by the fraudulent connivance of her

said husband (which she does not believe), is invalid and fraudulent as to her rights, and prays that the same may be annulled and set aside"; and she further "directly charges that, without her authority, the said Foglesong directed Mr. Kent, trustee, as aforesaid, to make the deed to said Rees Crabtree, instead of to your oratrix; and it was so directed by the court and so done, and that she is now owner of the resultant trust therein."

The plaintiff in her bill thus relies upon what she styles the "broad and comprehensive terms" of the act of assembly of the 4th of April, 1877, "securing to married women all property acquired by them before or after marriage"; and insisting that she is entitled to a deed for said 111 acres of land, and to hold same as her sole and separate estate, free from the claim of said Dunn, or any other creditor of her said husband, she prays an injunction to prevent the sale of said land; that D. W. Dunn, Rees Crabtree, Elias Foglesong, G. W. Kinzer, J. C. Smith and R. C. Kent, trustee, be made parties defendant, and required to answer, but waiving answers under oath, except as to her said husband, Rees Crabtree, and her said brother, Elias Foglesong, who were called upon to answer under oath; and that the said injunction be, at the hearing, perpetuated, and for general relief.

Her husband, Rees Crabtree, and the brother, Elias Foglesong, separately answer, and admit the averments in the bill. The defendants, G. W. Kinzer-and D. W. Dunn, answer separately, denying the equity asserted in the plaintiff's bill, and charge that it is but a fraudulent device and combination between Rees Crabtree and wife and the brother of the latter, to shield the property of said Crabtree from the payment of his debts.

To sustain the case set up in her bill, the depositions of Polly A. Crabtree, Henry Foglesong, her father, and Elias Foglesong, her brother, were taken.

On motion made in vacation, after due notice, the injunction was, on the 12th day of March, 1887, dissolved; and from that decree of dissolution the case is here on appeal.

Preliminary to the consideration of the case on the merits, it is necessary to pass upon the competency of the appellant, Polly A. Crabtree, as a witness in this case, her deposition having been taken in her own behalf, and the same being in the record here. The taking of her deposition was objected to on the ground that her husband was a party to the suit and directly interested, and that the wife could not testify either in behalf of, or against his interest. Under the circumstances, and in the light of the case stated in the plaintiff's bill, that she is incompetent to testify, and that her deposition must, therefore, be rejected, is a proposition too well settled to need the support either of argument or authority.

Coming now to the case on its merits, we are clearly of opinion that the appellant has no case, and that there is no error in the decree appealed from. It is rare that so bald a claim is presented to a court of equity. Indeed, if we had to look alone to the case as stated by the plaintiff in her bill, it is so full of inconsistent, contradictory and incredible statements as to disentitle it to credit.

Her claim, as stated in her bill, is, that the John Crabtree tract of land, of which the 111 acres in controversy is part, was sold by R. C. Kent, trustee, and was bid off, or purchased, by her husband, Rees Crabtree, not for himself, but for John Crabtree, who executed his bonds therefor payable in instalments, but being unable to meet the payments as they became due, he (John Crabtree) surrendered his purchase, and Elias Foglesong, her brother, took the purchase, with the understanding that she, Mrs. Crabtree, would become the purchaser from him (Elias Foglesong) of this 111 acres, part of said tract; that having certain personal property, including a small amount of money, and having obtained the promise of aid from her father, Henry Foglesong, she purchased the 111 acres from her

brother, and paid him therefor with her own money and means, which she alleges was advanced to her by her said father as and for her share of his estate; and that the said Rees Crabtree, her husband, had no means of his own and made no payments on said land.

Notwithstanding this singular statement in her bill, in her petition for appeal she makes a very different statement, as follows: "That in the year 1872, by virtue of a decree of the circuit court of Wythe county, R. C. Kent, trustee, sold what is known as 'the old John Crabtree land,' under a deed of trust, and at said sale Rees Crabtree became the purchaser of same, and with Elias Foglesong, who is a brother of petitioner, executed to said Kent, trustee, his bonds for said land; that Rees Crabtree finding himself utterly unable to pay for said land, at a later day, wanted to surrender his purchase and get rid of same; that said Elias Foglesong, petitioner's said brother, agreed to assume the shoes of said Rees Crabtree and become a substitute purchaser of all of said land, if your petitioner would agree and undertake to become a purchaser, from said Elias Foglesong, of a portion of said purchase, to-wit: a boundary of 111 acres of land situated on Walker's creek, in Bland county, at the agreed price of $997, and the said Elias was to take the residue of the purchase to sell or keep; that said Elias and petitioner saw their father, Henry Foglesong, a man of means, and stated the matter to him, and after an assurance from her father that he would aid her in paying for said boundary of 111 acres of land, by way of her advancements from him, it was agreed, at said petitioner's house, in Bland, that she would, herself, out of her own separate estate and personal funds, pay for and become the purchaser of said boundary of 111 acres, one Samuel Steel becoming the purchaser of the other part of said Elias Foglesong's said substituted purchase, and so the matter was agreed and concluded."

The two statements—one from the plaintiff's bill, and the other from her petition for appeal—are utterly irreconcilable.

In the one it is said that Rees Crabtree, the appellant's husband, had no other connection with the purchase of "the old John Crabtree land," at the trustee's sale, than to bid it off for John Crabtree, who executed his bonds therefor, but being unable to meet them as they fell due, surrendered his purchase to Elias Foglesong, and that the latter became the substituted purchaser upon an agreement with the appellant that she should become the purchaser from him of this 111 acres, a part of the John Crabtree purchase; and in the other it is said that Rees Crabtree became the purchaser of the entire John Crabtree tract of land at the trustee's sale, and, with Elias Foglesong as surety, executed *his* bonds to the trustee for the purchase money, and that he (Rees Crabtree) being unable to meet the payments, surrendered his purchase to Elias Foglesong, who sold the 111 acres, part thereof, to appellant, &c. Doubtless the latter statement, so far as it represents Reese Crabtree as purchasing the entire tract at the trustee's sale, and executing his bonds, with Elias Foglesong as his surety, for the purchase money, is true; but the balance of the statement, as well as the statement in the bill, is unsustained by any satisfactory evidence and is wholly unworthy of credit.

Elias Foglesong, the brother of the appellant, was, as the surety of Rees Crabtree, bound for the purchase money for the whole tract sold by the trustee, and by arrangement between Rees Crabtree and himself, he could have become substituted as purchaser in the place of Crabtree, and if he had made any such arrangement and had paid the purchase money to the trustee, the latter would have reported the facts to the court, and the trustee would have been directed by the court to convey to him as substituted purchaser. Or if, as pretended by the appellant, Elias Foglesong agreed to take the shoes of Rees . Crabtree as purchaser, on condition that appellant would purchase of him the 111 acres, and the appellant had been in a condition to make such purchase, surely her brother, said Elias Foglesong, would have communicated the facts to the trustee,

so that the same could be reported by him to the court, and the proper orders made for her protection. But the record in the suit in which the trust sale was made, is not exhibited in this suit, nor is the deposition of the trustee, who is living, taken. The omission of matters so material, and so easy of access, can be accounted for only on the ground that they would not have answered the appellant's purpose.

On the other hand, so far from Elias Foglesong having taken any step or done any act evincing that his sister, the appellant, had any interest in this 111 acres of land, when the time arrived when the conveyance had to be made, he expressly directed and procured the deed to be made to the original purchaser of the whole tract, Rees Crabtree. If the record of the suit in which the trust sale was made was here, it is highly probable that we would have a satisfactory explanation why only 111 acres, and not the entire purchase, was conveyed to Rees Crabtree; and in the absence of that record the fair presumption is, that instead of Elias Foglesong having become the substituted purchaser in place of Rees Crabtree as to the entire purchase of the latter, he, by some agreement between them, did become substituted as to the small residue of the tract over and above 111 acres, and that this 111 acres only was decreed to be conveyed to Rees Crabtree. In any view of the subject there is nothing to sustain the claim of the appellant.

As set forth in the statement of the case, the plaintiff (appellant here) in her bill, after waiving an answer under oath as to the other defendants, including D. W. Dunn, the judgment creditor of her husband, calls for a sworn answer from her husband, Rees Crabtree, and her brother, Elias Foglesong, and they, as if thoroughly taught their lesson, plumb the track and admit as true the incredible statements contained in her bill, and upon which she relies to establish an equity as regards the land in question. But however closely they agree with her in the case as set up in her bill, they do not agree with her

account as set forth in her petition for appeal, and though they might agree with her in both of her versions, yet it would not suffice, for the attendant facts and circumstances render it impossible to accept either as true.

She holds herself out as having purchased the 111 acres from her brother Elias, the pretended substitute purchaser, and as having paid therefor with her own means, when there is no evidence that she held any separate estate. In fact she only claims to have had some personalty given her by her father, but never settled to her separate use; so that the property thus claimed by her to have been applied to the purchase of this land, was in law absolutely the property of her husband, and it having been so applied (if in fact there was any such, and it was so applied) long anterior to the statute, known as the " married woman's act," she can derive no aid therefrom.

In her bill the appellant alleges positively, not only that she purchased the land in question, of her brother, Elias Foglesong, but that she paid for it with her own means; and she exhibits with her bill the receipt of Elias Fogelsong to her for $380, dated 20th ¦December, 1886, which she alleges to have been executed for the last payment made by her, and balance in full of the purchase price, $997. But it turns out that no such actual payment was ever made by her. On the contrary, it appears in evidence that this receipt was a mere gratuity—a pretended gift or release to his sister by Elias Fogelsong for that large portion of the purchase price. Moreover, R. C. Kent, trustee, had, by direction of Elias Fogelsong, conveyed the land to Rees Crabtree on the 15th of June, 1872, fourteen years prior to the date of this receipt. And this generous brother, who is held up as having released this large sum in her favor, is, in her bill, directly and specifically charged with having, without her authority, directed R. C. Kent, trustee, to make the deed to her husband, Rees Crabtree, instead of to her.

In the face of all these facts, the appellant insists that her money paid for the land in question, and that there is, there-

fore a resulting trust in her favor; and she asks that the deed to her said husband be annulled and set aside, and the land conveyed to her as her separate property.

In the light of all the circumstances, it would be worse than an idle waste of time to enter into argument or to cite authorities to show that nothing even remotely akin to a resulting trust, can be deduced from such facts. The decree of the court below is eminently correct, and the same must be affirmed.

DECREE AFFIRMED.